UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
RED APPLE 86 FLEET PLACE
DEVELOPMENT, LLC,

                    Plaintiff,
      -v-

STATE FARM FIRE AND CASUALTY
COMPANY and ALE SOLUTIONS,
INC.,

                    Defendants.
```

22-cv-05582 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

Red Apple 86 Fleet Place Development, LLC ("Red Apple") is a New York real estate company that owns a rental building located at 86 Fleet Place in Brooklyn. State Farm Fire and Casualty Company ("State Farm") obtained and guaranteed payment for the leases of three units at 86 Fleet Place to house a State Farm policyholder and her family (the "Tenants") after their home was nearly destroyed. State Farm stopped paying in November 2020, but the Tenants continued living at 86 Fleet Place without picking up the tab. By May 2022, the Tenants had accumulated $192,302 in unpaid rental bills.

On May 27, 2022, Red Apple sued State Farm and its agent, ALE Solutions, Inc. ("ALE"), in New York state court. See ECF No. 1, Ex. 1. The complaint alleged five causes of action: breach of contract, against State Farm (Count I); breach of good faith and fair dealing, against State Farm (Count II); fraud, against both

1

defendants (Count III); fraudulent inducement, against both defendants (Count IV); and promissory estoppel, against State Farm (Count V). Defendants removed the action to this Court, which has jurisdiction under 28 U.S.C. § 1332.

Both defendants filed motions on August 31, 2022. State Farm moved to dismiss all but the breach of contract claim against it, ECF No. 19, and ALE moved for judgment on the pleadings for both claims against it, ECF No. 22. During oral argument on the motions on November 7, 2022, the Court indicated that the counts at issue were insufficiently pled but allowed Red Apple to move for leave to amend the complaint. See ECF No. 37. Red Apple so moved, ECF No. 33, and both defendants filed oppositions, ECF Nos. 34, 36. By "bottom-line order" on November 25, 2022, the Court granted both defendants' motions and denied as futile Red Apple's motion for leave to amend. ECF No. 37.

On December 2, 2022, State Farm moved for summary judgment on the sole remaining claim, breach of contract. ECF No. 38. Three days later, Red Apple did the same. ECF No. 45. On April 10, 2023, the Court held oral argument on the motions. The Court now reconfirms and supplies reasons for the November 25, 2022 "bottom-line order," ECF No. 37, grants State Farm's motion for summary judgment, ECF No. 38, denies Red Apple's motion for summary judgment, ECF No. 45, and directs the entry of final judgment.

I.    **Factual Background**[1]

In 2018, the home of a State Farm policyholder was largely destroyed. ECF No. 1, Ex. 1 ("Complaint"), ¶ 9. To temporarily house the policyholder and her family, State Farm -- through its agent ALE -- secured leases for three rental units at 86 Fleet Place, owned by plaintiff Red Apple. Id. ¶¶ 13-18. In a letter to Red Apple on November 21, 2018, State Farm offered the following terms:

> Please accept this letter as confirmation of State Farm Insurance Company's commitment to pay for a lease term of six (6) months, with a month to month option thereafter, for three (3) units being rented by the above-referenced insured . . . in accordance with the terms of the applicable leases pertaining to the three (3) units. Payments for the units will be made by ALE Solutions on behalf of State Farm.

Id. ¶ 15. Red Apple agreed to the terms and entered the three leases "[i]n consideration of Defendants' guaranty of payment." Id. ¶¶ 16-18.

Unbeknownst to Red Apple, State Farm was simultaneously contesting the policyholder's insurance coverage. Id. ¶ 21. In fact, State Farm was litigating its disclaimer of insurance coverage in state court. Id. According to the complaint, Red Apple "would not have entered into the Leases had it known that State

---

[1] As an aid to explaining the Court's rulings on State Farm's motion to dismiss and ALE's motion for judgment on the pleadings, this section recites the facts as alleged in the complaint. The Court discusses the later-developed evidence in Section III, infra, as part of the Court's explanation for its rulings on the parties' motions for summary judgment.

Farm was attempting to disclaim coverage and that it was engaged in the Insurance Action." Id. ¶ 22.

Nevertheless, State Farm continued paying rent until November 2020. Id. ¶ 25. Rather than vacate the three units at that point, however, the Tenants continued to reside at 86 Fleet Place. Id. ¶ 24. By May 2022, the Tenants had accrued $192,302 of unpaid rental bills. Id. ¶ 25.

## II.  Legal Standard

### A. Motion to Dismiss and Motion for Judgment on the Pleadings

The legal standard for evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) are identical. See Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). To survive either motion, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard is not a stringent one. However, neither "[t]hreadbare recitals of the elements of a cause of action" nor "sweeping and unsupported

allegations" suffice to state a claim. <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009).[2]

Fraud and fraudulent concealment claims, however, are evaluated under a different, heightened standard. A plaintiff alleging fraud -- as Red Apple does against both defendants in Counts III and IV -- must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," <u>id.</u>, the complaint "must allege facts that give rise to a strong inference of fraudulent intent," which "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness," <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290-91 (2d Cir. 2006).

**B. Motion for Summary Judgment**

Summary judgment is warranted when "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a genuine issue of material fact, the Court "constru[es] the evidence in the light most favorable to the non-moving party and draw[s] all reasonable inferences and resolv[es]

---

[2] Here and elsewhere, internal quotation marks are omitted unless otherwise indicated.

all ambiguities in [its] favor." <u>Sessa v. Trans Union, LLC</u>, 74 F.4th 38, 42 (2d Cir. 2023).

III. **Analysis**

   A. **State Farm is entitled to dismissal of Counts II-V against it and ALE is entitled to judgment on the pleadings for Counts III-IV against it.**

      1. <u>Breach of Good Faith and Fair Dealing Claim (Count II) against State Farm</u>

"In New York, all contracts imply a covenant of good faith and fair dealing." <u>511 W. 232nd Owners Corp. v. Jennifer Realty Co.</u>, 773 N.E.2d 496, 500 (N.Y. 2002).[3] "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." <u>Id.</u>

State Farm argues Count II should be dismissed because it is duplicative of the breach of contract claim under Count I. State Farm is right that when breach of contract and breach of the implied covenants of good faith and fair dealing are pled together on the same facts, New York law does not recognize the latter as a separate cause of action. <u>See Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 81 (2d. Cir. 2002).

---

[3] The parties agree that New York law governs all of the claims at issue.

Counts I and II are not entirely duplicative, however. They stem, at least partially, from different facts. Count I asserts that State Farm's November 21, 2018 letter -- conveying its commitment "to pay for a lease term of six (6) months, with a month to month option thereafter" -- imposed on State Farm an obligation to pay rent on the Tenants' behalf for as long as the Tenants occupied their units. Complaint ¶¶ 27, 29. While Count II is related to the contract, its crux is State Farm's alleged failure to disclose its disclaimer of the Tenants' insurance coverage and its litigation with the Tenants in state court. Id. ¶¶ 33-36. So, the two claims are not duplicative.

Nevertheless, even accepting as true State Farm's failure to disclose its insurance disclaimer and state court action, such failure does not plausibly support a claim for breach of good faith and fair dealing. The complaint alleges no facts suggesting State Farm's failure to disclose information about its insurance action subverted or destroyed any of Red Apple's contractual entitlements. See 511 W. 232nd Owners Corp., 773 N.E.2d at 500; Dvoskin v. Prinz, 613 N.Y.S.2d 654, 655 (2d Dep't 1994) (explaining that a claim for breach of the implied covenant of good faith and fair dealing must "allege that the [defendants] sought to prevent the performance of the contract[] or to withhold its benefits").

To the extent Red Apple argues it would not have entered the contract had it been fully informed, that argument relates to a

potential claim for fraudulent inducement, not a breach of good faith and fair dealing. See Ambac Assurance Corp. v. Countrywide Home Loans, Inc., 106 N.E.3d 1176, 1182 (N.Y. 2018).

 2. Fraud and Fraudulent Inducement Claims (Counts III-IV) against Both Defendants

Red Apple fares no better with its fraud claims. The complaint fails to meet Rule 9(b)'s heightened pleading standard. The complaint alleges that defendants "knowingly failed to inform Plaintiff" of the insurance action and disclaimer "in order to induce Plaintiff to rely upon [their] promises and enter into the Leases." See Complaint ¶¶ 41-42, 47-48. Such conclusory statements, which contain no particularized allegations of "the circumstances constituting fraud," see Fed. R. Civ. P. 9(b), do not "give rise to a strong inference of fraudulent intent," Lerner, 459 F.3d at 290. Indeed, the complaint does little to assure it relies on anything more than "speculation" to support an inference of fraud rather than mere negligence. Lerner, 459 F.3d at 290. Therefore, Counts III and IV are dismissed against State Farm, and the Court also grants ALE judgment on the pleadings for both counts.

 3. Promissory Estoppel Claim (Count V) against State Farm

To state a claim for promissory estoppel under New York law, a plaintiff must allege "(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the

8

promise is made; (3) and an injury sustained . . . by reason of that reliance." Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39, 44 (2d Cir. 1995).

"Promissory estoppel is a narrow doctrine designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement." BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 949 F. Supp. 2d 486, 516 (S.D.N.Y. 2013). "[W]here," as here, "a plaintiff also alleges breach of a contract," any promissory estoppel claim must "allege[] that the defendant had a duty independent from any arising out of the contract." NTT Am. Inc. v. Tenn. Data Systems, LLC, 2018 WL 5493088, at *4 (S.D.N.Y. Oct. 11, 2018).

The complaint here does just the opposite. The "clear and unambiguous promise" that the complaint alleges State Farm made -- "to pay the Tenants' rent for six months and thereafter on a month-to-month basis for so long as Tenants occupy the subject premises" -- plainly arises from State Farm's November 21, 2018 letter laying out the terms of the contract between the parties. See Complaint ¶¶ 15-16, 53.

Perhaps aware of this deficiency, Red Apple argues that it is still entitled to plead promissory estoppel in the alternative. But that does not solve Red Apple's problem. Even if only in the alternative, Red Apple has not pleaded facts alleging a "contract formation problem" that could support a claim of promissory

estoppel instead of breach of contract. <u>BNP Paribas</u>, 949 F. Supp. 3d at 516. Instead, the complaint alleges that Red Apple entered leases with the Tenants in reliance on State Farm's "promise to guaranty payments of rent under the Leases." Complaint ¶ 56. But the complaint fails to allege any details supporting an inference that Red Apple relied on anything other than a contractual agreement. The Court thus dismisses Count V, as well.

**B. The Court denies Red Apple's motion for leave to amend the complaint.**

The Court denies Red Apple's motion for leave to amend the complaint because the proposed amended complaint, <u>see</u> ECF No. 32, "fail[s] to cure prior deficiencies or to state a claim under Rule 12(b)(6)." <u>Pyskaty v. Wide World of Cars, LLC</u>, 856 F.3d 216, 225 (2d Cir. 2017). The proposed amended complaint would whittle down the claims to just breach of contract, fraud, and fraudulent inducement. ECF No. 32, ¶¶ 6-7. Because State Farm did not move to dismiss the breach of contract claim, the Court analyzes only whether the proposed amended complaint would state a claim for fraud and fraudulent inducement.

Although the proposed amended complaint would plead additional facts in support of the fraud claims, <u>see</u> ECF No. 32, ¶¶ 41-52, those additional facts are still not enough to clear the hurdle of Rule 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R.

Civ. P. 9(b). But the Rule's allowance of generality "regarding condition of mind" is not "a license to base claims of fraud on speculation." <u>Lerner</u>, 459 F.3d at 290. The sum of the complaint's allegations must "give rise to a strong inference of fraudulent intent." <u>Id.</u>

The strongest of the proposed additional allegations are that "Defendants knowingly failed to inform Plaintiff regarding State Farm's denial of coverage so as to perpetuate the tenancy . . . to Plaintiff's detriment," and that "State Farm had no intention of reimbursing rent beyond 2020 under any circumstances and was not at all concerned about the negative consequences to the Plaintiff." ECF No. 32, ¶¶ 47-48. But these allegations of State Farm's intent remain inherently speculative. Moreover, it is hard to square the allegation that "State Farm had no intention of reimbursing rent beyond 2020 under any circumstances" with the separate allegation that State Farm was subject to a court order <u>requiring</u> it to pay for the Tenants' housing "pending the outcome of the Insurance Action." <u>Id.</u> ¶¶ 42, 49. Red Apple cannot allege a "strong inference of fraudulent intent" by merely asserting that State Farm would blithely be willing to defy a court order.

Finally, alleging a "strong inference of fraudulent intent" on the part of a sophisticated insurance company requires a theory of fraud that has at least some semblance of business sense. The proposed amended complaint alleges that "State Farm has an economic

incentive not to make a full disclosure to Plaintiff since the Leases provided cheaper temporary housing from hotel accommodations." Id. ¶ 47. But Red Apple would also allege that State Farm had worked with Red Apple before to place a different family in the same building for temporary housing. Id. ¶ 44. The allegations provide little reason to infer that State Farm would jeopardize a continuing business relationship by defrauding a repeat partner. A plaintiff could virtually always assert that a defendant has a short-term economic incentive to commit fraud. That, however, cannot be enough to support a "strong inference" that the defendant so intended. See Chill v. Gen. Elec. Co., 101 F.3d 263, 267-68 (2d Cir. 1996) (explaining that a speculative inference of a motive common to every for-profit business does not give rise to a "strong inference of fraudulent intent").

**C. The sole remaining claim, breach of contract against State Farm, fails at summary judgment.**

Red Apple and State Farm have each moved for summary judgment on the sole remaining claim, breach of contract. State Farm's motion carries the day. Because State Farm validly terminated the contract in accordance with its terms, its rental payment obligations ceased in November 2020 and, as a matter of law, there has been no breach.

Both parties agree the relevant contractual language comes from State Farm's November 21, 2018 letter. That letter, quoted in full, reads:

> Please accept this letter as confirmation of State Farm Insurance Company's commitment to pay for a lease term of six (6) months, with a month-to-month option thereafter, for three (3) units being rented by the above-referenced insured, Tyrana Jones, in accordance with the terms of the applicable leases pertaining to the three (3) units. Payments for the units will be made by ALE Solutions on behalf of State Farm.

ECF No. 39, Ex. G.

As the text of the contract plainly states, State Farm's initial "commitment to pay" lasted only six months. Id. After that point, State Farm had a right to exercise "a month-to-month option" for the Tenants' three units. Id. And, if State Farm did so, that month-to-month option would be governed by "the terms of the applicable leases" for the units. Id.

In turn, the leases contained the following provision allowing for early termination:

> Option to Terminate: Owner agrees that Tenant has the option to terminate the lease on sixty (60) days' notice. This option may not be exercised before March 31st, 2019. Tenant may exercise the notice by sending a notarized letter to the Owner. The date of the letter is the "Notice Date." Tenant agrees to pay rent in full from the Notice Date until sixty (60) days thereafter . . . .

ECF No. 47, Ex. F.

In an email to Red Apple on October 2, 2020, an ALE representative memorialized a conversation in which Red Apple "agreed to release ALE Solutions and the Jones family of any

contractual obligation for the [three units] as of 11/30/2020."
ECF No. 39, Ex. I. The same email notes the Tenants' "intent to
vacate" on that date. Id. Although the record does not demonstrate
that State Farm, ALE, or any of the Tenants sent Red Apple a
notarized letter exercising the termination option, Red Apple does
not contest that, on or before October 2, 2020, it "agreed to
release ALE Solutions and the Jones family of any contractual
obligation" for rental payments beginning on November 30, 2020.
Id. In fact, Red Apple's own statement of undisputed facts
submitted under Local Rule 56.1 included the October 2, 2020 email
as an exhibit. See ECF No. 47, Ex. I.

Red Apple does not contest that State Farm paid the Tenants'
rent in full through November 30, 2020. See ECF No. 47, ¶ 24.
Instead, Red Apple shifts the focus elsewhere, emphasizing that
the Tenants "never vacated on November 30, 2020 and continue[] to
remain in possession of the Units without paying rent as a month-
to-month tenant." Id. ¶ 23. True as that may be, the Tenants are
not a party to this suit. Red Apple fails to explain how the
Tenants' failure to vacate means that State Farm has violated any
obligations. Red Apple points to no provision in the lease
agreements that requires State Farm to assume any responsibility
for the Tenants' conduct after State Farm's own payment obligations
have ceased.

Recognizing that no such provision exists, Red Apple invokes language in an unrelated contract it had with State Farm about a different tenant. That contract, unlike the one at issue, expressly stated State Farm's payment obligations were limited to a period of 24 months. See ECF No. 47, Ex. A. Red Apple argues that, by negative implication, the contract at issue imposes indefinite payment obligations on State Farm. That is not a proper method of interpreting a contract.[4] "It is a court's task to enforce a clear and complete written agreement according to the plain meaning of its terms, without looking to extrinsic evidence to create ambiguities not present on the face of the document." N.Y.C. Off-Track Betting Corp. v. Safe Factory Outlet, Inc., 809 N.Y.S.2d 70, 73 (1st Dep't 2006) (alterations omitted). A "mere assertion by a party that contract language means something other than what is

---

[4] Even if it were proper to look at the terms of an unrelated contract that State Farm entered on behalf of a different tenant, any number of variables could explain State Farm's decision to include an express temporal limitation in one contract but not another. Indeed, State Farm has provided a compelling explanation for that difference. At the time State Farm sent Red Apple the November 21, 2018 letter laying out the contractual terms at issue, State Farm was subject to a court order directing it to "pay housing costs" for the Tenants until the state court action was resolved. ECF No. 39, Ex. D. Because State Farm could not know how long it would take for the action to be resolved -- or whether the state court would eventually require State Farm to make payments for a longer period -- State Farm could not have included a provision limiting its payment obligations to a period of 24 months.

clear when read in conjunction with the whole contract is not enough to create an ambiguity." Id.

Despite Red Apple's "mere assertion," the terms of the contract and incorporated lease agreement are unambiguous. Id. State Farm's payment obligations for the month-to-month option that it exercised were governed by "the terms of the applicable leases," all of which specifically allowed for termination of those payment obligations with sixty days' notice. ECF No. 39, Ex. G; ECF No. 47, Ex. F. The very cases Red Apple cites state that, under New York contract law, "a written guarantee remains in effect until terminated in the manner specified in the agreement itself." Caldor, Inc. v. Mattel, Inc., 817 F. Supp. 408, 413 (S.D.N.Y. 1993). The parties do not dispute that, under the agreement's termination provision, Red Apple "agreed to release ALE Solutions" -- which paid rent on behalf of State Farm – "of any contractual obligation for the [units] as of 11/30/2020." ECF No. 47, Ex. I. That is the end of the matter.

Because the contractual terms are unambiguous, Red Apple's final argument -- that the contract should be construed against State Farm, the contract's drafter -- similarly falls short. The principle that "a contract must be construed most strongly against the party who prepared it" applies only "[i]n cases of doubt or ambiguity." Jacobson v. Sassower, 489 N.E.2d 1283, 1284 (N.Y. 1985). Otherwise, as here, the contract must be understood

16

"according to the plain meaning of its terms." <u>N.Y.C. Off-Track Betting</u>, 809 N.Y.S.2d at 73.

## IV.   **Conclusion**

For the reasons explained above, the Court reconfirms and supplements its "bottom-line order" of November 25, 2022, ECF No. 37, which granted defendant State Farm's motion to dismiss Counts II-V against it, ECF No. 19, granted defendant ALE's motion for judgment on the pleadings for both counts against it, ECF No. 22, and denied plaintiff Red Apple's motion for leave to amend the complaint, ECF No. 33. As for the sole remaining claim, breach of contract against State Farm, the Court now grants State Farm's motion for summary judgment, ECF No. 38, and denies Red Apple's motion for summary judgment, ECF No. 45. The Clerk is directed to enter final judgment dismissing the case.

SO ORDERED.

New York, NY
August 30, 2023

_____
JED S. RAKOFF, U.S.D.J.